Cornelius SINGLETON, Petitioner,

v.

Morris THIGPEN, Commissioner, Alabama Department of Corrections, and Charles E. Jones, Warden, Atmore Prison, Holman Unit, Respondents.

Civ. A. No. 87–0754–AH.

United States District Court,
S.D. Alabama, S.D.

Nov. 18, 1992.

Blair Brown, Zuckerman, Spader and Goldstein, Washington, D.C., and Matthew McDonald, Miller, Hamilton, Snider and Odom, Mobile, Ala., for petitioner.

Kenneth S. Nunnelly, Deputy Atty. Gen., Office of Atty. Gen. of the State of Alabama, Montgomery, Ala., for respondent.

## MEMORANDUM OPINION & ORDER

HOWARD, Chief Judge.

This cause is before the Court on Cornelius Singleton's petition for a writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Alabama Supreme Court has set November 20, 1992 (less than two days from today) as the execution date for Petitioner, who seeks collateral relief for the sixth time overall, and for the second time in this Court,[1] since his conviction and sentence were affirmed on direct appeal in 1985.[2] Detailed descriptions of the facts involved in Petitioner's grisly murder of a catholic nun, Sister Ann Hogan, can be found in the opinions of the Alabama appellate courts on direct appeal in this action.[3] Petitioner asserts twenty-one distinct constitutional violations as grounds for granting the writ. Respondents answer that each and every claim is an abuse of the writ. The sole issue, therefore, is whether Petitioner can establish cause and prejudice, as those terms are used in Habeas Corpus litigation, or in the absence thereof, whether Petitioner can establish that failure to hear his claims at this stage would result in a fundamental miscarriage of justice. Also before the Court are Petitioner's motion to reconsider its Order of November 13, 1992 denying relief from judgment, [Doc. 47], and a motion to amend the petition to add a claim of newly discovered evidence establishing Petitioner's innocence. [Doc. 48]. For the reasons that follow, the petition for collateral relief and application for a stay of execution are DENIED. The motion to reconsider is DENIED. The motion to amend the petition is DENIED.

## I. THE CLAIMS AT ISSUE

Respondents assert the defense of abuse of the writ against all of Petitioner's twenty-one claims.[4] Those claims are as follows, and are numbered here in accordance with their numbering in Singleton's petition in this action:

1. The failure to afford Petitioner a resentencing hearing before a jury violates the Eighth and Fourteenth Amendments of the United States Constitution.

2. Reliance by the trial court on an aggravating factor relating to murders committed "in the course of a robbery" violates the *Ex Post Facto* clause in the Constitution, as applicable against the States by the Fourteenth Amendment.

3. Reliance by the trial court on an aggravating factor relating to "especially heinous, atrocious or cruel" murders violated various provisions in the Constitution.

4. The trial judge's failure to correct the prosecutor's misstatement of the "especially heinous, atrocious or cruel" aggravating factor violated various provisions of the Constitution.

5. Failure of the trial judge to credit Petitioner with various mitigating circumstances, especially mental retardation.

8. Ineffective assistance of counsel at resentencing.

10. Petitioner lacked the capacity to knowingly and intelligently waive his *Miranda* rights, and admission of his oral and written confessions violated various constitutional provisions.

12. Admission of the fruits of Petitioner's statements violated various constitutional provisions.

15. The Prosecutor's arguments to the jury in the guilt phase of the trial violated various constitutional provisions.

16. The prosecutor's comments to the jury at the sentencing phase violated various constitutional provisions.

---

1. On October 20, 1987, this Court denied Singleton's petition for a writ of Habeas Corpus.

2. *See Ex Parte Singleton,* 465 So.2d 443 (Ala. 1985).

3. *See Singleton v. State,* 465 So.2d 432 (Ala.Cr. App.1983), *aff'd sub nom. Ex Parte Singleton,* 465 So.2d 443 (Ala.1985).

4. In light of its holding the Court need not examine the other defenses of non-retroactivity and multiple procedural default asserted by Respondents.

17. The trial judge erroneously admitted hearsay evidence in violation of various constitutional provisions.

18. The trial judge's reasonable doubt instructions to the jury violated various constitutional provisions.

19. The trial judge's unanimity instruction to the jury violated various constitutional provisions.

20. The trial judge failed to conduct a competency hearing in violation of various constitutional provisions.

21. The sentencing judge failed to conduct a competency hearing in violation of various constitutional provisions.

The following claims were raised before this Court in the prior habeas corpus action in 1987, and are raised again in this Petition:

7. Ineffective assistance of counsel at sentencing.

11. Petitioner did not voluntarily waive his *Miranda* rights and the admission of his oral and written confessions violated various constitutional provisions.

13. The trial judge erroneously informed the jury that Petitioner's confession was voluntary in violation of the U.S. Constitution.

14. The Prosecutor's use of racially discriminatory peremptory challenges violated the Sixth and Fourteenth Amendments of the Constitution.

Finally, the Court notes that the following claims were partially raised before this Court during Singleton's earlier habeas corpus action in 1987:

6. Ineffective assistance of counsel at trial.

9. Ineffective assistance of appellate counsel.[5]

## II. STANDARD OF REVIEW ON ABUSIVE AND SUCCESSIVE CLAIMS

Respondents contend that Petitioner's claims constitute an abuse of the writ in that the claims were not raised in the earlier habeas proceedings in this Court. Petitioner, in response, argues that ineffective assistance of counsel during the prior federal habeas action excuses his failure to raise those claims in the earlier action.

Rule 9(b) of the rules governing section 2254 (Habeas Corpus) cases in the United States District Courts states, under "Successive petitions", that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or if new and different grounds are alleged, the judge finds that failure to assert those grounds in a prior petition constituted an abuse of the writ."

28 U.S.C. § 2244(b) states that "a subsequent application for a writ of habeas corpus on behalf of [a person in custody pursuant to the judgment of a State court] need not be entertained ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court ... is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ."[6]

"When a prisoner files a second or subsequent [federal habeas] application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove

---

**5.** The Court notes that Respondents have mistakenly asserted that Petitioner's claims numbered 6, 9, 11, 13 and 14 were not previously asserted, and therefore constitute an abuse of the writ. They are in fact successive petitions, but the legal hurdles that Petitioner must clear for the Court to examine the merits of those claims are identical to those in the abuse of the writ context, as discussed *infra*. It therefore

makes no analytical difference in terms of separating which parts of the ineffective assistance of trial and appellate counsel claims were raised in the earlier habeas corpus action in this Court, and which parts are raised now for the first time in federal court.

**6.** 28 U.S.C. § 2244(b) (1988).

then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in [the Supreme Court's] procedural default decisions."[7] If a petitioner cannot establish cause for failure to raise the claim earlier, the Court's inquiry is finished, and the Court need not consider the question of prejudice.[8]

A petitioner may abuse the writ by failing to raise a claim through inexcusable neglect, and by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice.[9] Application of the cause and prejudice standard "clarifies the imprecise contours of the term 'inexcusable neglect.'"[10] The Court must concentrate on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time.[11] The question is whether a petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the federal habeas process at that time.[12] The Court must invoke equitable principles to define its discretion to excuse pleading and procedural requirements for petitioners who could not comply with them in the exercise of reasonable care and diligence.[13]

The cause and prejudice test also applies to successive petitions in federal court which raise grounds identical to grounds heard and decided on the merits in a previous petition.[14] Thus, for example, a petitioner filing successive or repetitive claims may have to show cause for not bringing all the evidence in support of a claim in the earlier petition.[15]

To demonstrate "cause" as that term in used in habeas corpus litigation, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim adequately or at all,[16] that is, "a showing of some external impediment preventing counsel from constructing or raising the claim."[17] Objective factors that constitute cause include "interference by officials" that renders earlier filing of a claim impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel."[18] In addition, constitutionally ineffective assistance of counsel constitutes cause.[19] A petitioner

---

7. *McCleskey v. Zant,* —— U.S. ——, ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

8. *See id.* —— U.S. at ——, 111 S.Ct. at 1474 (*citing Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 2648–49, 91 L.Ed.2d 397 (1986)).

9. *Id.* —— U.S. at ——, 111 S.Ct. at 1468.

10. *Id.* —— U.S. at ——, 111 S.Ct. at 1471. "The requirement of cause in the abuse of the writ context is based upon the principle that [a] petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition. If what [a] petitioner knows or could discover upon a reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.* —— U.S. at ——, 111 S.Ct. at 1472.

11. *Ibid.*

12. *Id.* —— U.S. at ——, 111 S.Ct. at 1472.

13. *Id.* —— U.S. at ——, 111 S.Ct. at 1469–70.

14. *Sawyer v. Whitley, Warden,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); *Martin v. Singletary,* 965 F.2d 944, 945 (11th Cir.1992). The Court notes that, contrary to Petitioner's assertions in his response to Respondents' answer, each of Petitioner's successive claims presented to this Court in his earlier habeas corpus action resulted in a ruling on the merits. *See* Memorandum Opinion & Order of October 20, 1987 (Howard, J.), at 56–57 (claim 7 in this action), 27–34 (claim 11 in this action), 34–39 (claim 13 in this action), 39–40 (claim 14 in this action), 43–55 (claim 6 in this action) and 57–59 (claim 9 in this action).

15. *Sawyer, supra,* —— U.S. at ——, 112 S.Ct. at 2523.

16. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

17. *Id.* at 492, 106 S.Ct. at 2648.

18. *Id.* at 488, 106 S.Ct. at 2645.

19. *Ibid.*

may also show cause where a recently announced and path-breaking rule of law involving a constitutional claim so novel that its legal basis was not reasonably available to counsel prevents earlier assertion of the claim.[20]

■ A federal court must still reach the merits of an abusive or successive petition if "the ends of justice demand."[21] The Supreme Court has described this exception as applying to that "narrow" class of "extraordinary instances when a constitutional violation has caused the conviction of one innocent of the crime."[22] Such cases involve a "fundamental miscarriage of justice."[23] A petitioner relying on this exception must supplement his "constitutional claim with a 'colorable showing of factual innocence.'"[24] The Supreme Court has also described this as an inquiry into "whether a constitutional violation has probably resulted in the conviction of one who is actually innocent."[25]

In *Sawyer, supra,* the Supreme Court definitively stated the applicable standard when a petitioner seeks to demonstrate a "fundamental miscarriage of justice." In a capital case, the petitioner must show by clear and convincing evidence that but for constitutional error at the sentencing phase, no reasonable juror or judge would find him eligible for the death penalty under the relevant state law.[26] A petitioner can satisfy this standard by showing innocence of the crime itself, by showing no aggravating circumstance existed, or by

showing some other condition of eligibility was not met.[27] The "'actual innocence' requirement must focus on those elements which render a defendant eligible for the death penalty, and not on additional mitigating evidence which was prevented from being introduced as a result of claimed constitutional error."[28] The Supreme Court in *Sawyer* approvingly quoted the Eleventh Circuit's interpretation of the actual innocence test,[29] which states that

a petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body. That is, but for the constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty,[30]

or that "but for an alleged constitutional error, the sentencing body would have been *compelled* to choose life imprisonment instead of the death penalty."[31]

## III. DISCUSSION

### A. Cause & Prejudice

■ At the outset, the Court notes that by Order of this Court dated November 13,

**20.** *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). This rule necessarily applies only to an abusive claim, since a successive or repetitive claim by definition was available to counsel in the earlier proceeding.

**21.** *McCleskey, supra,* — U.S. at ——, 111 S.Ct. at 1465 (*quoting Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963)); *see generally Sawyer, supra; Johnson v. Singletary,* 938 F.2d 1166, 1183 (11th Cir.1991) (*en banc*).

**22.** *McCleskey, supra,* — U.S. at ——, 111 S.Ct. at 1466.

**23.** *Ibid.*

**24.** *Id.* — U.S. at ——, 111 S.Ct. at 1471 (*quoting Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106

S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)) (plurality opinion).

**25.** *Carrier, supra,* 477 U.S. at 496, 106 S.Ct. at 2650.

**26.** *Sawyer, supra,* — U.S. at ——, ——, 112 S.Ct. at 2523, 2525.

**27.** *Shaw v. Delo,* 971 F.2d 181, 186 (8th Cir. 1992) (*citing Sawyer, supra,* 112 S.Ct. at 2522).

**28.** *Sawyer, supra,* — U.S. at ——, 112 S.Ct. at 2523.

**29.** *Id.* — U.S. at ——, 112 S.Ct. at 2523.

**30.** *Johnson, supra,* 938 F.2d at 1183 (italics in original).

**31.** *Id.* at 1183, n. 46 (italics in original).

1992, Petitioner's response to Respondents' answer to the petition was due by the close of business on Monday, November 16, 1992, 5:00 P.M. In addition to the extraordinarily late filing in this action one week before the execution date, counsel for Petitioner failed to obey the Court's deadline, and began faxing his response at 5:48 P.M. on November 16, 1992. Later that same night, at 10:32 P.M., Petitioner faxed five additional documents to the Court seeking further relief.[32] The Court observes, in connection with this last minute surge of documents and briefs, that the United States Supreme Court has "condemn[ed] any efforts on the part of habeas petitioners to delay their filings until the last minute with a view to obtaining a stay because the district court will lack time to give them the necessary consideration before the scheduled execution."[33] "A court may resolve against such a petitioner doubts and uncertainties as to the sufficiency of his submission."[34] With this admonition in mind, the Court turns to Petitioner's contentions.

Petitioner has strenuously and eloquently argued that counsel in his prior habeas action and first three state coram nobis proceedings performed his duties with such dereliction that it constitutes "cause" for failure to raise the abusive claims earlier, for rehashing the successive claims, and for excusing any state procedural defaults on those claims. These arguments include serious allegations of forgery and failure to comply with court orders regarding representation. However, Petitioner's argument is foreclosed by ample precedent. It is well settled that there is no constitutional right to counsel in state post-conviction proceedings or in federal habeas corpus actions.[35] Consequently, Petitioner cannot claim ineffective assistance of counsel in such proceedings as "cause".[36]

■ Petitioner also argues that he has shown cause so that the Court may consider claim 19, *supra*. He argues that *Mills v. Maryland*[37] and *McKoy v. North Carolina*,[38] upon which claim 19 is based, are novel claims that were not reasonably available to counsel in the prior habeas action. However, the basis of claim 19, that a jury should be free to consider any and all evidence as a mitigating factor, is not novel, and accordingly, Petitioner's argument is bound to fail.[39]

■ Finally, Petitioner argues that claim 18, *supra*, regarding the trial judge's reasonable doubt instructions, is based on a novel claim such that he can show cause for failure to raise the claim earlier. This requires the Court to decide whether *Cage v. Louisiana*,[40] upon which claim 18 is based, is a path-breaking rule of law involving a constitutional claim so novel that its legal basis was not reasonably available to counsel in the earlier habeas corpus action

---

32. These documents were not officially filed until the morning of November 17, 1992, when the Clerk's office opened for business.

33. *Sawyer v. Whitley, Warden,* — U.S. —, —, n. 7, 112 S.Ct. 2514, 2520, n. 7, 120 L.Ed.2d 269 (1992).

34. *Ibid.*

35. *See* U.S. Const., Amend. VI; *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality opinion); *Whiddon v. Dugger,* 894 F.2d 1266 (11th Cir.1990); *Toles v. Jones,* 888 F.2d 95, 99–100 (11th Cir.1989), *panel opinion reinstated,* 951 F.2d 1200 (11th Cir.1992); *Blair v. Armontrout,* 976 F.2d 1130, 1139 (8th Cir.1992) (petitioner "may not establish 'cause' based on ineffective assistance of counsel in a *federal* habeas

case"); *Shaw v. Delo,* 971 F.2d 181, 185 (8th Cir.1992) (same); *cf. McCleskey, supra,* — U.S. at — – —, 111 S.Ct. at 1470–71 ("[a]pplication of the cause and prejudice standard in the abuse of the writ context does not ... imply that there is a constitutional right to counsel in federal habeas corpus").

36. *See Coleman, supra,* — U.S. at —, 111 S.Ct. at 2566.

37. 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

38. 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

39. *Smith v. Armontrout,* 888 F.2d 530, 545 (8th Cir.1989).

40. 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (*per curiam*).

in this Court. In *Cage*, the Supreme Court, in a unanimous per curiam opinion, held that a reasonable juror could have interpreted a criminal jury instruction equating reasonable doubt with "grave uncertainty", "actual substantial doubt" and "moral certainty" to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment. Although no federal court has directly ruled that *Cage* is not a novel claim, the Court is certain that *Cage*, a short unsigned opinion, is no more than an application or extension of the principles of *In re Winship*,[41] far from being a claim so novel that its legal basis was not reasonably available to counsel at an earlier stage.[42] Therefore, Petitioner cannot show cause for failure to raise claim eighteen in the earlier habeas corpus action. Accordingly, Petitioner has failed to show cause excusing his abusive second petition for a writ of habeas corpus.

## B. Fundamental Miscarriage of Justice/Ends of Justice

 The Alabama death penalty statute (the 1975 Act) applicable to Petitioner at the time he was resentenced in 1983 read as follows:

> Section 4.... the Court after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the Defendant to death. If the court imposes a sentence of death, it shall set forth in writing as the basis for the sentence of death, findings of fact from the trial and the sentence hearing which shall at least include the following:
>
> (a) One or more of the aggravating circumstances enumerated in Section 6, which it finds exists in the case and which it finds sufficient to support the sentence of death, and

> (b) Any of the mitigating circumstances enumerated in Section 7 which it finds insufficient to outweigh the aggravating circumstances.

. . . . .

> Section 6. Aggravating circumstances. Aggravating circumstances shall be the following:
>
> (a) The capital felony was committed by a person under sentence of imprisonment;
>
> (b) The Defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person;
>
> (c) The Defendant knowingly created a great risk of death to many persons;
>
> (d) The capital felony was committed while the Defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping for ransom;
>
> (e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
>
> (f) The capital felony was committed for pecuniary gain;
>
> (g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
>
> (h) The capital felony was especially heinous, atrocious or cruel.[43]

The sentencing judge found beyond a reasonable doubt and to a moral certainty that two aggravating circumstances existed, namely that Sister Ann Hogan's murder was committed while Petitioner was engaged in the commission of a robbery, and that the capital offense was especially

---

**41.** 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**42.** *Cf. Skelton v. Whitley,* 950 F.2d 1037 (5th Cir.1992) (holding that *Cage* is a new rule that could not be retroactively applied even if Petitioner established cause); *Ex Parte Beavers,* 598 So.2d 1320, 1322–23 (Ala.1992) (*Cage* is a new

rule, but not a "clear break" with past precedent, and *Cage* involves the application of established precedent to a different factual setting).

**43.** Acts 1975, No. 75–213, H. 212, §§ 4 & 6 (1975), *repealed by* Acts 1981, No. 81–178, § 20 (1981).

heinous, atrocious or cruel compared to other capital offenses.[44]

Petitioner contends that both of these factors are constitutional error, and that but for those errors no reasonable juror or sentencing body could have found him eligible for the death penalty. Under *Sawyer, supra,* the district court must look to state law and determine whether Petitioner was eligible for the death penalty under Alabama law. The Court will focus on § 6(h) of the 1975 Act in analyzing Petitioner's miscarriage of justice claim:

The 1975 Act provides that if the capital felony was especially heinous, atrocious or cruel it shall constitute an aggravating circumstance. In *Lindsey v. Thigpen,*[45] the Eleventh Circuit upheld against an Eighth Amendment vagueness challenge the latest Alabama death penalty statute, which contains a provision stating it shall be an aggravating circumstance that the "capital offense was especially heinous, atrocious or cruel compared to other capital offenses." [46] The Court of Appeals relied on a three-part test in analyzing the statute.

> First, the appellate courts of the state must have narrowed the meaning of the words "heinous, atrocious and cruel" by consistently limiting their application to a relatively narrow class of cases, so that their use "informs the sentencer of what it must find to impose the death penalty". Second, the sentencing court must have made either an explicit finding that the crime was "especially heinous, atrocious or cruel" or an explicit finding that the crime exhibited the narrowing characteristics set forth in the state-court decisions interpreting those words. Third, the sentencer's conclusion—that the facts of the case under consideration place the crime within the class of cases defined by the state court's narrowing construction of the term "heinous, atrocious or cruel"—must not have subverted the narrowing function of those words by obscuring the boundaries of the class of cases to which they apply.[47]

The Court of Appeals found that the Alabama statute and relevant case law, under both the current version of the statute and its predecessor, satisfied the three-part test. The Eleventh Circuit went on to emphasize that the sentencing judge made the required finding that the capital offense was especially heinous, atrocious or cruel as compared to other capital offenses.[48] The Court has examined Judge McRae's findings in imposing the death sentence in this action, and finds that under applicable Alabama law, Singleton was eligible for the death penalty, and therefore, the court rejects Petitioner's argument that Judge McRae's reliance on § 6(h) of the 1975 Act was constitutional error. Judge McRae specifically found that the evidence convinced him

> Sister Ann [Hogan] was buried alive, being suffocated by the towel only after she was bound hand and foot and buried face down under debris. *This capital offense stands out among the common run of capital offenses* as one that is outrageously and extremely wicked, vile, and shockingly evil. Accordingly, the § [6(h) of the 1975 Act] aggravating circumstance does exist.[49]

The Court also finds that the aggravating factor in § 6(h) of the 1975 Act, together with the facts before the sentencing court, are such that a reasonable juror could find Petitioner eligible for the death penalty under Alabama law.[50] Because Pe-

**44.** *Singleton v. State,* 465 So.2d 432, 441–42 (Ala. Cr.App.1983) (second amended sentence order on remand) (McRae, J.).

**45.** 875 F.2d 1509, 1514–15 (11th Cir.1989) (*per curiam* ).

**46.** *Id.* at 1512, n. 4 (*citing* ALA.CODE § 13A–5–49 (1982)).

**47.** *Id.* at 1514 (citations, brackets & footnote omitted).

**48.** *Id.* at 1515.

**49.** *Singleton, supra,* 465 So.2d at 442 (italics supplied).

**50.** In light of its holding, the Court need not examine Petitioner's argument that it was constitutional error for Judge McRae to find as an aggravating circumstance that the murder was committed in the course of a robbery, but neither does the Court express any view as to the merits of this argument.

titioner has failed to demonstrate a miscarriage of justice, the Court need not examine the merits of Petitioner's claims. Petitioner has failed to establish cause, and has failed to demonstrate a fundamental miscarriage of justice, and therefore, his abuse of the writ is inexcusable. Accordingly, Cornelius Singleton's petition for a writ of Habeas Corpus is DENIED.

### C. The Motions to Reconsider and to Amend

Petitioner's motion to reconsider the Court's order denying relief from judgment under Federal Rule of Civil Procedure 60(b)(6) is DENIED. Petitioner also seeks to amend his petition, filed on Thursday, November 12, 1992, by adding at this late hour a twenty-second claim alleging newly discovered evidence in an effort to show that Petitioner is innocent of the murder at issue. Petitioner further seeks an evidentiary hearing to develop the newly discovered evidence. Petitioner faxed the motion to amend to the Courthouse at 10:42 P.M. on November 16, 1992, over five hours after the Court's deadline for his response to Respondents' answer had expired. The motion was officially filed by the clerk less than three days before Petitioner's scheduled execution. The Court notes that Petitioner alleges that the information upon which the motion is based became available to Petitioner between November 3 and 9, 1992. Even so, Petitioner's failure to assert this claim in his petition filed on November 12, 1992 is inexcusable and can only reflect an "effor[t] on the part of [Singleton] to delay [his] filings until the last minute with a view to obtaining a stay because the district court will lack time to give them the necessary consideration before the scheduled execution."[51] The Court draws against the Petitioner any doubts and uncertainties as to the sufficiency of his submission, and hereby DENIES the motion to amend as inex-

cusably dilatory and a deliberate attempt to obtain a last-minute stay of execution. Additionally, the newly discovered evidence does not show that Petitioner is "actually innocent" of the murder, inasmuch as the affidavit evidence of investigator George W. White indicates merely that one Charles A. Martin told him that fifteen years ago Martin heard someone, whom he can no longer identify, walk out of a nightclub and mention that he killed "that dead nun bitch". This unreliable, hearsay evidence, which is partially controverted by an affidavit submitted by Respondents, falls far short of the required colorable showing of factual innocence.[52]

In summary: Singleton's petition for a writ of habeas corpus is DENIED. His application for a stay of execution is DENIED. His motions to reconsider and to amend the petition are DENIED. Petitioner is ORDERED to file forthwith a motion for a certificate of probable cause if he intends to appeal.

---

51. *Sawyer v. Whitley, Warden,* —— U.S. ——, ——, n. 7, 112 S.Ct. 2514, 2520, n. 7, 120 L.Ed.2d 269 (1992).

52. Respondents have waived the necessary exhaustion of state remedies required before the

Court can consider this claim. *See Battle v. Thomas,* 923 F.2d 165, 166 & n. 10 (11th Cir. 1991); *Thompson v. Wainwright,* 714 F.2d 1495 (11th Cir.1983).